**Charlie HERBST, Petitioner–Appellant,**

v.

**John R. VANNATTA, Respondent–Appellee.**

No. 03–3543.

United States Court of Appeals, Seventh Circuit.

Submitted March 24, 2004.[*]

Decided March 25, 2004.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Charles Herbst, Miami Correctional Facility, Bunker Hill, IN, for Petitioner–Appellant.

Richard C. Webster, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

## ORDER

After a Conduct Adjustment Board (CAB) at the Miami Correctional Facility found Indiana inmate Charlie Herbst guilty of blocking a locking device with a toothpaste cap, he was sanctioned with the loss of 60 days of earned-credit time. Herbst exhausted his administrative remedies and then petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied Herbst's petition, and he appeals. We affirm.

In February 2003 Sergeant White was working in Herbst's housing unit when he saw a toothpaste cap attached to Herbst's cell door. White directed Herbst to remove the cap from the door and give it to him, and Herbst complied. Another guard who witnessed the incident, Officer C. Hight, wrote a witness statement verifying that the toothpaste cap had been blocking a locking device on the door. Herbst was charged with the offense of blocking a locking device. At his disciplinary hearing he said that he did not know that the cap was there. The CAB found him guilty after reviewing the conduct report, Herbst's testimony, the witness statement, and a photocopy of the cap. Herbst sought administrative review but received no relief.

In his petition to the district court, Herbst argued that the CAB should have examined the actual toothpaste cap rather than a photocopy of it. He vaguely refers to "established Policy 0027," which he says requires the CAB to review physical evidence upon request from the inmate. There is no evidence in the record that Herbst requested the CAB to look at the cap. In any case, possible violations of prison policy do not entitle prisoners to federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Due process requires only that there be some evidence to support the discipline. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The photocopy of the cap

along with the conduct report and witness statement suffice as some evidence.

In a related argument, Herbst also contended that there is no evidence that he—rather than his cell mate or a previous occupant of his cell—placed the cap there. He alleged in the district court that there is a high turnover rate in the cell block, every 90 days, and the cap could have been there long before he moved into the cell. Herbst also explained that the cap was not preventing the door from locking shut but instead somehow served to keep "the door from locking open as that prevents thefts during recreation and meals." The charge encompasses any blocking of the locks regardless of purpose. Herbst's explanation serves only to demonstrate that occupants of the cell, not other inmates in the cell block, have an incentive to tamper with the lock in this way. That narrows the class of suspects to Herbst and his cell mate. We are not moved by Herbst's attempt to implicate all previous occupants; he has never said that he is a new occupant of the cell, and we doubt the guards would continuously miss a security risk that, according to Herbst, the inmates create regularly. The class of suspects is thus two, and the guards could have reasonably concluded either cell mate was responsible for the cap. According to Herbst, both he and his cell mate were disciplined, so the guards apparently thought that they colluded to tamper with the lock. Though the case against Herbst might be stronger had the guards revealed their basis for incriminating him, we cannot say that the CAB's conclusion was unreasonable. Due process requires only some evidence, *id.*, and the CAB's reasonable conclusion that Herbst was involved in the tampering serves as some evidence. *Cf. Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir.1992) (inmate can be held accountable for contraband even if a limited number of other inmates had access to the area where contraband was found).

Finally, Herbst argues that he was denied due process because two documents generated during the disciplinary proceeding list the wrong violation number for his offense. Herbst explains that when he submitted his case for administrative review, C.A. Penfold exceeded his authority by correcting the mistakes. Even if the violation numbers were initially inaccurate, all of the documents named the violation correctly and, most importantly, detailed the factual basis for the charge. Herbst received sufficient notice of the nature of the charge to satisfy due process. *Northern v. Hanks*, 326 F.3d 909, 910–11 (7th Cir.2003). Regarding Penfold's correction, Herbst has failed to provide an adequate record to support his argument because he failed to submit any documents from his administrative appeals. Even if Penfold did correct the violation number, though, that would not amount to a due process violation. *Id.* at 911.

Accordingly, the judgment of the district court is AFFIRMED.